**STERNS & WEINROTH**
A Professional Corporation
Simon Kimmelman, Esq. (SK-3654)
Valerie A. Hamilton, Esq. (VH-5697)
50 West State Street, Suite 1400
P.O. Box 1298
Trenton, New Jersey 08607-1298
(609) 392-2100
Attorneys for Nutraquest, Inc.,
Debtor and Debtor-in-Possession

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NUTRAQUEST, INC.,<br><br>　　　　　Debtor. | Civil No.: 03-5869 (GEB)<br><br>United States Bankruptcy Court<br>Chapter 11 Case No. 03-44147 (RTL) |
| In re:<br><br>Nutraquest Personal Injury Cases. | |
| HALPERIN, ARTHUR & CAROL,<br>　　　　　Plaintiffs,<br>v.<br>CYTODYNE TECHNOLOGIES, INC., a New Jersey corporation,<br>　　　　　Defendant. | Civil Action No.: 04-1080(GEB) |
| CLIFTON, KEN & FULCHER, KRISTEN,<br>　　　　　Plaintiffs,<br>v.<br>CYTODYNE TECHNOLOGIES, INC., et als.,<br>　　　　　Defendants. | Civil Action No.: 04-819(GEB) |

| | |
|---|---|
| EDWARDS, MICHELLE,<br>　　　　　　　　Plaintiff,<br>v.<br>CYTODYNE TECHNOLOGIES, INC., et als.,<br>　　　　　　　　Defendants. | Civil Action No.: 04-821(GEB) |
| PIERCE, VIRGINIA,<br>　　　　　　　　Plaintiff,<br>v.<br>CYTODYNE TECHNOLOGIES, INC., et als.,<br>　　　　　　　　Defendants. | Civil Action No.: 04-1747(GEB) |
| ROSS, LINDA,<br>　　　　　　　　Plaintiff,<br>v.<br>CYTODYNE TECHNOLOGIES, INC., et als.,<br>　　　　　　　　Defendants. | Civil Action No.: 04-826(GEB)<br><br>Return Date: February 14, 2006 |

**APPLICATION IN SUPPORT OF OMNIBUS MOTION BY DEBTOR AND DEBTOR-IN-POSSESSION FOR APPROVAL OF FIVE SETTLEMENT AGREEMENTS AND RELEASES PURSUANT TO FED. R. BANKR. P. 9019 AND FOR RELATED RELIEF**

TO:　HONORABLE GARRETT E. BROWN, JR., CHIEF JUDGE
　　　UNITED STATES DISTRICT COURT

　　　Nutraquest, Inc., f/k/a Cytodyne Technologies, Inc., debtor and debtor-in-possession ("Nutraquest" or "Debtor"), by its attorneys, Sterns & Weinroth, A Professional Corporation, submits this Application in support of the Debtor's omnibus motion for approval of five

2

Settlement Agreements and Releases pursuant to Fed. R. Bankr. P. 9019 and for related relief (the "Motion"), and respectfully applies and shows as follows:

## BACKGROUND

1. On October 16, 2003 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, title 11, United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). The reference of this case to the Bankruptcy Court was withdrawn by the District Court, *sua sponte*, on or about January 17, 2006.

2. Nutraquest continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. Nutraquest is a closely held, New Jersey corporation, conducting business at 2231 Landmark Place, Manasquan, New Jersey. Nutraquest is in the business of developing and producing dietary supplement and sports nutritional products.

4. On or about September 20, 2002 Plaintiff Arthur Halperin ("Halperin") commenced a civil action in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County in the State of Florida, Case No. CA 02-11328AA, against Nutraquest, alleging various tort claims arising from the manufacture, distribution and sale of *Xenadrine RFA-1* (the "Halperin Action").

5. On or about March 6, 2002, Plaintiffs Ken Clifton and Kristen Fulcher (collectively, "Clifton") commenced a civil action in the Superior Court of the State of California, County of Alameda, Case No. 2002-0430047 against Nutraquest and others, alleging various tort claims arising from the manufacture, supply and sale of *Xenadrine RFA-1* (the "Clifton Action").

6. On or about September 4, 2001, Plaintiff Michelle Edwards ("Edwards") commenced a civil action in the Superior Court of the State of California, County of San Francisco, Case No. 324268, against Nutraquest and others alleging various tort claims arising from the manufacture, supply and sale of *Xenadrine RFA-1* (the "Edwards Action").

7. On or about October 16, 2003 Plaintiff Virginia Pierce ("Pierce") commenced a civil action in the 14th Judicial District Court in the Parish of Calcasieu, State of Louisiana, Case No. 2001-005697, against Nutraquest alleging various tort claims arising from the manufacture, supply and sale of *Xenadrine RFA-1* (the "Pierce Action").

8. On or about March 27, 2002 Plaintiff Linda Ross ("Ross")[1] commenced a civil action in the Superior Court of the State of California, County of San Diego, Case No. GIC-785515, against the Nutraquest and others alleging various tort claims arising from the manufacture, supply and sale of *Xenadrine RFA-1* (the "Ross Action").[2]

9. On or about December 12, 2003, Nutraquest filed a motion in the United States District Court for the District of New Jersey (the "District Court") to transfer all personal injury and wrongful death actions pending against it or arising out of the use of its products to the District Court.

10. By Order dated January 23, 2004 (the "Transfer Order"), the District Court granted Nutraquest's motion, ordered all such pending actions transferred to it (but for one that was subsequently ordered transferred upon reconsideration) and stayed all such actions pending further order of the Court.

---

[1] For the purpose of the within application, Halperin, Clifton, Edwards, Pierce and Ross shall be referred to collectively as the "Personal Injury Claimants."

[2] For the purpose of the within application, the Halperin Action, the Clifton Action, the Edwards Action, the Pierce Action and the Ross Action shall be referred to collectively as the "Insured Personal Injury Actions."

11. On or about February 6, 2004, Halperin filed a Proof of Claim (Claim number 94) against the Debtor's Estate, asserting an "unliquidated" unsecured claim in an unspecified amount.

12. On or about August 19, 2004, Clifton filed a Proof of Claim (Claim number 315) against the Debtor's Estate, asserting an unsecured claim in the amount of $1.5 million.

13. On or about March 5, 2004, Edwards filed a Proof of Claim (Claim number 195) against the Debtor's Estate, asserting an unsecured claim in an amount in excess of $75,000.00.

14. On or about June 26, 2004, Pierce filed a Proof of Claim (Claim number 293) against the Debtor's Estate, asserting an unsecured claim in the amount of $500,000.00.

15. By Order dated April 6, 2005, the District Court ordered that certain personal injury cases, including the Insured Personal Injury Actions, be mediated before the Hon. Marina Corodemus (ret.) in order to arrive at confidential agreements of conditional valuation of said cases.[3]

16. After intensive negotiations between the parties and mediation with Judge Corodemus, the Personal Injury Claimants, Nutraquest, and other defendants reached a conditional valuation of the claims set forth in the Insured Personal Injury Actions.

17. Since the Debtor's share of the settlement amounts is being paid entirely by the Debtor's insurance carriers, the payment does not diminish or otherwise affect the Debtor's Estate and there is no just cause to delay making such payment. Now that valuations of the Debtor's personal injury cases is complete, it is clear that the Debtor's insurance coverage will be more than sufficient to satisfy all covered claims. Accordingly, the Debtor and its insurers

---

[3] Several other mediation orders were entered subsequently and, as a result, approximately 99% of all personal injury actions have been mediated and conditionally valued.

have agreed to request approval of the Settlement Agreements and Releases prior to confirmation of a plan of reorganization.

### Relief Requested

18.     The Debtor submits this Application in support of its request that the District Court enter an Order pursuant to Fed. R. Bankr. P. 9019 approving the Settlement Agreements and Releases resolving the Insured Personal Injury Actions identified herein and granting related relief.  Copies of the Settlement Agreements and Releases, which have been redacted to preserve the confidentiality of the mediated valuation of the Insured Personal Injury Actions, are attached respectively hereto and made a part hereof as Exhibits "A" through "E".

### Jurisdiction and Venue

19.     The District Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157(b)(5) and 1334.  Venue of this proceeding and the within motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicate for the relief sought herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 362.

### Summary of the Settlement Agreements & Releases[4]

20.     Pursuant to and subject to the terms and conditions of the Settlement Agreements and Releases, within 20 days of the Effective Date of the Agreements, the Debtor shall pay the respective settlement amounts to the Personal Injury Claimants in the Insured Personal Injury Actions.  The Debtor's responsibility for payment of the settlement amounts is fully covered by the Debtor's insurance policy issued by the Westchester Fire Insurance Company, policy number

---

[4] The summary set forth herein is not intended to supercede or modify any provision of the Settlement Agreements and Releases entered into by the parties, nor is it intended as an exhaustive review of all provisions of any Settlement Agreement and Release.  In the event of a conflict between the summary and a Settlement Agreement and Release, the Settlement Agreement and Release shall govern.

6

MLN-673409.[5]  No funds of the Debtor or the Estate will be utilized to pay the settlement amounts.

21. In order for the Settlement Agreements and Releases to become effective, an Order is required that: (a) approves these Agreements in their entirety; (b) determines that payment of the settlement amounts does not diminish or otherwise affect property of the Estate as the settlements are funded solely by the Debtor's insurance carriers; (c) operates as an absolute bar, under all applicable law, to every affirmative recovery or claim, including every claim for contribution, indemnification and any other remedy or relief, by any person or entity against Nutraquest, the Releasees (as such term is defined in the Settlement Agreements and Releases) and their respective successors, affiliates, subsidiaries, assigns, agents, insurers, attorneys, accountants, directors, shareholders, members, officers and employees for claims that were or could have been asserted in the Insured Personal Injury Actions; and (d) lifts the automatic stay to the extent necessary to effectuate the terms of the Agreements (the "Approval Order").

22. The Effective Date of the Settlement Agreements is the date upon which the Approval Order becomes final and non-appealable.

**Legal Basis for Requested Relief**

**A.     The Settlement Agreement and Release Should Be Approved Pursuant to Fed. R. Bankr. P. 9019**

23. Bankruptcy courts favor compromises between the parties. In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). In re Healthco Int'l, Inc., 136 F.3d 45, 50 (1st Cir. 1998), citing 9 Collier on Bankruptcy ¶ 9019.01, at 9019-2; In re Sassalos, 160 B.R. 646, 653 (D. Or. 1993).

---

[5]  The Westchester Fire Insurance Company is making payment on behalf of Nutraquest. The remaining available limit of the Westchester Fire Insurance Company policy will be reduced as a result of this payment.

Bankruptcy courts have the authority, on motion by a debtor, to approve a compromise or settlement.  Fed. R. Bankr. P. 9019(a).

24. In determining whether to approve a proposed settlement pursuant to Rule 9019, courts typically engage in a four-part analysis:  (a) the probability of ultimate success should the claim be litigated; (b) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (c) the difficulties, if any, in collecting on any judgment which might be obtained; and (d) the paramount interest of the creditors and a proper deference to their reasonable views regarding the litigation.  Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157, 1163-64, 20 L.Ed.2d 1, 9-10 (1968); In re RFE Indus., Inc., 283 F.3d 159, 165 (3d Cir. 2002); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996).  "In determining whether the compromise should be approved, the bankruptcy judge is required to 'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposed.'"  Jeffrey, 70 F.3d at 185, quoting In re GHR Cos., 50 B.R. 925, 931 (Bankr. D. Mass. 1985)).

25. The court's role is not to conduct a full evidentiary hearing or mini-trial, or to decide the merits of individual issues before a compromise can be approved.  In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986); see also In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992), aff'd, 8 F.3d 812 (3d Cir. 1993).  Rather, the court must determine whether the settlement as a whole is fair and equitable.  Anderson, 390 U.S. at 423. The bankruptcy court must state a specific basis for its finding that a settlement is "fair" and "reasonable."  Houbigant, Inc. v. Federal Ins. Co., 374 F.3d 192, 204 (3d Cir. 2004).

26. "In deciding whether a settlement is prudent and reasonable, a court must consider the risk to the settling parties.  It is the extent of the defendants' exposure to liability and not

8

mere allegations in the plaintiffs' complaint that govern the appraisal of reasonableness." Vargas v. Hudson County Bd. of Elections, 949 F.2d 665, 674 (3d Cir. 1991).

27. Only if the Court concludes that the settlement falls below "the lowest point in the range of reasonableness" should the compromise be rejected. In re Edwards, 228 B.R. 552, 568-69 (Bankr. E.D. Pa. 1998), citing In re Pennsylvania Truck Lines, Inc., 150 B.R. 595, 601 (E.D. Pa. 1992); In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir.), cert. denied, 464 U.S. 822, 104 S. Ct. 89, 78 L.Ed.2d 97 (1983).

28. "[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification." In re Martin, 91 F.3d 389, 395 (3d Cir. 1996); Hill v. Burdick (In re Moorehead Corp.), 208 B.R. 87, 89 (1st Cir. BAP 1997) ("The judge ... is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference.").[6]

29. In the instant case, although the Debtor and the other defendants in the Insured Personal Injury Actions believe that they would have a reasonable possibility of success on the merits if all of the claims asserted therein were fully litigated, the outcome is still uncertain.

30. Nutraquest and the other defendants in the Insured Personal Injury Actions have consistently denied any liability to the Personal Injury Claimants. Although Nutraquest and the other defendants in the Insured Personal Injury Actions believe that they have no liability to the Personal Injury Claimants, they agreed to settle with them to avoid the time, expense and risk of further litigation. In exchange for releases in favor of Nutraquest and the Releasees, Nutraquest's insurer will pay the entirety of the settlement amounts.

---

[6] Pursuant to 11 U.S.C. § 1107(a), a debtor-in-possession has the powers and duties of a trustee.

31. The Insured Personal Injury Actions raise complex legal and factual issues regarding causation of alleged injuries sustained by the Personal Injury Claimants. If this matter were to be fully litigated, all parties would have to engage in protracted and expensive discovery. There would be the need to retain multiple expert witnesses, each of whom would have to prepare written reports and be deposed. Ultimately, causation is an issue of fact that would have to be determined by a jury.

32. Rather than incur the extraordinary costs and risks associated with litigation, the Personal Injury Claimants, Nutraquest, and the other defendants voluntarily agreed to mediate the claims asserted in the Insured Personal Injury Actions. The parties attended mediation sessions with the Hon. Marina Corodemus (ret.), during which the merits of Personal Injury Claimants' claims, the defenses asserted by Nutraquest and other defendants, and all of the risks and costs of litigation were fully considered. Following intensive mediation efforts by all parties, as guided by Judge Corodemus, the Personal Injury Claimants, Nutraquest and the other defendants in the Insured Personal Injury Actions agreed to a mediated resolution.

33. The Settlement Agreements and Releases avoid the delay and expense that would be inherent in this protracted litigation process. Based upon the Debtor's experience in litigating similar claims, the Settlement Agreements and Releases provide a cost-effective and fair resolution of the Insured Personal Injury Actions.

34. There is no personal relationship between the Personal Injury Claimants and Nutraquest. The Settlement Agreements and Releases are arms' length agreements.

35. The approval of the Settlement Agreements and Releases is clearly in the best interests of creditors. The Estate will not be diminished by payment of the settlement amounts because Nutraquest's insurer, The Westchester Fire Insurance Company, will be paying the

entirety of the settlement amounts against the remaining limit of the policy. The Settlement Agreements and Releases obviate the need for the Debtor and its insurer to expend enormous amounts of time, money and resources litigating the complex legal issues raised in the Insured Personal Injury Actions and eliminates the risk that the Debtor's insurance policies will be exhausted or substantially impaired by an adverse verdict. The settlements will enable the Debtor to concentrate more of its time and resources toward the operation of its business, resolution of remaining claims and its emergence from Chapter 11.

36. The Settlement Agreements and Releases should be approved pursuant to Fed. R. Bankr. P. 9019.

### B. Payment of the Settlement Amount Does Not Diminish Property of the Estate

37. Payment of the settlement amounts does not diminish or otherwise affect property of the Estate, as the settlement is funded solely by the Debtor's insurance carriers. In re G-I Holdings, 278 B.R. 725, 736 (Bankr. D.N.J. 2002), citing First Fidelity Bank v. McAteer, 985 F.2d 114, 116-17 (3d. Cir. 1993).

38. Although insurance policies constitute property of the bankruptcy estate, determination of the whether the proceeds of the insurance policies constitutes property of the bankruptcy estate turns upon whether the Debtor has a right to receive the proceeds under state law. Excelsior Ins. Co. v. Pennsbury Pain Center, 975 F.Supp. 342, 353 (D.N.J. 1996)("[A]n insurance policy is only an asset of the estate to the extent that it increases the estate's assets or diminishes its liabilities."); In re Edgeworth, 993 F.2d 51 (5th Cir. 1993)(liability insurance proceeds not property of the estate when the debtor has no legally cognizable claim to them); Landry v. Exxon Pipeline Co., 260 B.R. 769, 785-794 (Bankr. M.D. La. 2001) (debtor has no cognizable claim to the proceeds of liability insurance policy paid by an insurer on account of a

11

covered claim, since the proceeds are paid to parties injured by policyholder's conduct, and debtor has no ability to have proceeds redirected to bankruptcy estate).

39. The insurance policies at issue in this case cover claims made against the Debtor and the proceeds of those policies are not payable to the Debtor. Moreover, the policies have no "cash surrender value" or other attributes that would redound to the benefit of the Estate. Since the payment of liability insurance proceeds does not inure to the Debtor, it cannot be said to increase the Debtor's assets or diminish its liabilities. Accordingly, this Court should find that the payment of the settlement amounts does not involve property of the Debtor's Estate and may proceed in advance of confirmation of a plan of reorganization.

**C. The Settlement Operates as an Absolute Bar to All Claims Asserted or Which Could Have Been Asserted or That Arise From, Arise Out of, Relate To or Pertain to the Personal Injury Actions.**

40. The Settlement Agreements and Releases provide, in Paragraph 8, that each of the Defendants and Releasees (as such term is defined in the Agreement):

> fully, finally, unconditionally and irrevocably releases and forever discharges Plaintiff and all other Defendants and Releasees, together with all of their heirs, personal representatives, administrators, agents, employees, directors, officers, shareholders, members, attorneys, accountants, insurers, predecessors, successors, assigns, parent corporations, subsidiary or related corporations and affiliates, of and from all claims asserted or which could have been asserted or that arise from, arise out of, relate to or pertain to the [Insured Personal Injury] Action, including but not limited to all claims for attorneys' fees, interest and costs of suit.

See, Exh. A-E, ¶ 8. The foregoing release is an integral part of the Settlement Agreements, and the effectiveness of the Settlement Agreements and Releases is conditioned upon this Court specifically approving this provision of the Settlement Agreements and Releases. The Debtor respectfully submits that this Court should approve this provision because it brings finality to the Insured Personal Injury Actions and all claims that were or could have been asserted in those pieces of litigation. Moreover, the Settlement Agreements were all negotiated at arms' length

and through intensive mediation. In the absence of the releases provided under the agreement, the Parties would not have entered into the Settlement Agreements and Releases.

33. Upon payment of the settlement amounts, the Personal Injury Claimants will each be deemed to have withdrawn his claim with prejudice and will not be entitled to vote upon a plan of reorganization for the Debtor. The Personal Injury Claimants will have no further claim of any kind or nature against the Estate or the Releasees (as such term is defined in the Agreement).

### D. Limited Relief from the Automatic Stay Should Be Granted in Order to Effectuate the Settlement Agreement and Release.

41. Section 362(a) of the Bankruptcy Code provides, among other things, that the filing of a bankruptcy petition operates as a stay of "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code]." 11 U.S.C. § 362(a)(6).

42. Upon request of a party in interest, the Court may grant relief from the stay provided under Section 362(a) for "cause."

43. The Debtor hereby requests that this Court grant limited relief from the automatic stay if and to the extent necessary to effectuate the terms of the Settlement Agreements and Releases.

WHEREFORE, the Debtor respectfully requests that the District Court approve the Settlement Agreements and Releases, in their entirety, and grant such other and further relief as is just and proper.

                                       **STERNS & WEINROTH,**
                                       **A Professional Corporation**
                                       Attorneys for Nutraquest, Inc.,
                                       Debtor and Debtor-in-Possession

                                       By: <u>/s/ Valerie A. Hmilton</u>
                                                Simon Kimmelman
                                                Valerie A. Hamilton

Dated:  January 19, 2006